IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TYRELL HALL**, | Case No. 3:15-cv-00234-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CLACKAMAS COUNTY, and CORIZON HEALTH, INC.**, | |
| Defendants. | |

Lynn S. Walsh, 209 S.W. Oak Street, Suite 400, Portland, OR 97204. Of Attorneys for Plaintiff.

James M. Daigle and Adam S. Heder, STEWART SOKOL & LARKIN LLC, 2300 S.W. First Avenue, Suite 200, Portland, OR 97201. Of Attorneys for Defendant Corizon Health, Inc.

**Michael H. Simon, District Judge.**

Plaintiff Tyrell Hall ("Hall" or "Plaintiff") brings this action against Defendants Clackamas County and Corizon Health, Inc. ("Corizon"). Hall alleges claims under the Americans with Disabilities Act, the Rehabilitation Act, and common law negligence. Hall also alleges civil rights violations under 42 U.S.C. § 1983. Hall's claims arise from Defendants' alleged failure properly to provide Hall with his prescribed medications while he was incarcerated in the Clackamas County Jail. Before the Court is Hall's motion to compel Corizon

PAGE 1 – OPINION AND ORDER

to produce documents pursuant to Federal Rule of Civil Procedure ("Rule") 37(a).[1] For the

reasons that follow, Plaintiff's motion is granted.

## STANDARDS

The Ninth Circuit instructs that "pre-trial discovery is ordinarily 'accorded a broad and

liberal treatment.'" *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v.*

*Taylor*, 329 U.S. 495, 507 (1947)). "This broad right of discovery is based on the general

principle that litigants have a right to 'every man's evidence,' *United States v. Bryan*, 339 U.S.

323, 331 (1950), and that wide access to relevant facts serves the integrity and fairness of the

judicial process by promoting the search for truth." *Shoen*, 5 F.3d at 1292.

This right of discovery, although broad, is not unlimited. Rule 26(b)(1) provides in

relevant part as follows:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its
> likely benefit. Information within this scope of discovery need not
> be admissible in evidence to be discoverable.

Rule 37(a) provides that a party may move for an order compelling discovery after the movant,

in good faith, has "conferred or attempted to confer with the person or party failing to make

disclosure or discovery in an effort to obtain it without court action."

---

[1] Defendant Clackamas County takes no position on this motion.

## BACKGROUND[2]

Hall is mentally disabled and has been diagnosed as bipolar with schizophrenia and severe anxiety. He requires daily medication to control his symptoms. On February 12, 2013, a Clackamas County judge sentenced Hall to serve 70 days in the Clackamas County Jail. Hall informed the judge that he had been in the Clackamas County Jail several months earlier and that the jail had failed to provide his medications as prescribed. At the request of Hall's defense counsel, the judge ordered Hall to take his medications as prescribed so as to impress upon the jail the importance of Hall's medications. Hall's mother, Helen Wolf ("Wolf"), gave Hall's medications to the court bailiff, who in turn provided the medications to the jail transport officer.

Hall was transported to the jail immediately after sentencing. He had a medical screening later that afternoon during which he provided the intake nurse, Melany Olson ("Nurse Olson"), with a list of his medications as well as his diagnoses and mental health history. Nurse Olson referred Hall to Dr. Joshua Dow ("Dr. Dow"), who provides medical services at the jail twice a week. Nurse Olson and Dr. Dow are Corizon employees. Corizon is a for-profit corporation that provides healthcare, including mental healthcare, to prisons and jails nationwide, including the Clackamas County Jail.

Hall did not receive his medications after he arrived at the jail even after Nurse Olson received verification of his prescriptions from his pharmacy. According to Hall, Nurse Olson knew that the jail's "prescribing provider"[3] did not like to prescribe mental health medications

---

[2] The parties have provided the Court with a limited evidentiary record. Thus, in this Background section, the Court recites facts alleged in Hall's second amended complaint when describing the alleged events that give rise to his claims. When the Court refers to evidence in the record rather than Hall's allegations, the Court provides a docket number and accompanying pinpoint citation in a footnote.

[3] Plaintiff uses the term "prescribing provider" without clearly explaining what is meant by that term.

PAGE 3 – OPINION AND ORDER

and would likely fail to prescribe the needed medications to Hall. Hall began to decompensate[4]

and on February 13, 2013, the next day, called Wolf to complain about the lack of medication.

Wolf contacted Hall's defense counsel, who in turn contacted a Clackamas County attorney and

informed the attorney about Hall's need for medication. The Clackamas County attorney told

Hall's defense counsel that Hall was receiving his medications. Hall, however, was not receiving

his medications. Hall's defense counsel also faxed a letter to the Jail Commander informing the

Commander of Hall's need for mental health medication. Hall still did not receive his prescribed

medications.

On the morning of February 14, 2013, Hall saw Dr. Dow, who ordered that Hall's needed

medications be prescribed to him. Hall, however, only received two of his three prescribed

medications on the evening of February 14, and he missed several doses on the following days.

Cathy Wenzinger ("Wenzinger"), a certified nursing assistant and also a Corizon employee, was

responsible for dispensing medications to Hall while he was at the jail.[5]

Hall continued to decompensate due to the improper administration of his medications.

On February 15, 2013, Hall became verbally disrespectful while trying to explain his need for

medications to Wenzinger.[6] Because of this behavior, Hall was sanctioned to 14 days in

isolation, a fine of $25, and the loss of all jail privileges including visitation, commissary,

telephone use, mail, reading material, recreation, and participation in jail programs. These

---

[4] Decompensation is the "failure of defense mechanisms such as occurs in initial and subsequent episodes of acute mental illness." *Taber's Cyclopedic Medical Dictionary* 586 (Donald Venes ed., 21st ed. 2009).

[5] Dkt. 35 ¶ 7.

[6] *Id.* ¶ 3.

PAGE 4 – OPINION AND ORDER

sanctions exacerbated Hall's deteriorating mental health condition. Even after Hall was admitted to isolation, Hall was still denied his medications as prescribed for a period of time.

Hall filed this lawsuit on February 10, 2015.[7] In Hall's second amended complaint, Hall alleges three claims: (1) violations of the Americans with Disabilities Act and the Rehabilitation Act, against Defendant Clackamas County only ("First Claim"); (2) violations of Hall's Eighth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, against both Defendants[8] ("Second Claim"); and (3) common law negligence, against Corizon only ("Third Claim").

In Hall's Second Claim, he alleges that Corizon was deliberately indifferent to his serious medical needs in the following ways: (1) in having a practice whereby inmates must wait days after entry to the jail before receiving prescribed medications; (2) in having a practice whereby inmates do not receive medications as prescribed; and (3) in failing to implement appropriate policies, procedures, and practices that ensure that inmates timely receive their medications as prescribed. Hall alleges that Corizon's conduct subjected Hall to cruel and unusual punishment, and that as a result of Corizon's violations of Hall's constitutional rights, Hall suffered severe emotional distress during his incarceration at the Clackamas County Jail.

In Hall's Third Claim, he alleges that the agents and employees of Corizon were negligent in the following ways: (1) in failing to provide Hall with his medications as prescribed; (2) in failing to provide appropriate mental health care; and (3) in allowing Hall to be sanctioned for behavior resulting from the medical neglect of Corizon's agents and employees.

---

[7] Dkt. 1.

[8] Hall brings his allegations regarding a Fourteenth Amendment due process violation against Defendant Clackamas County only.

On February 25, 2016, Hall's counsel took the deposition of Wenzinger.[9] Wenzinger testified that Corizon terminated her in 2015 for failing to give a patient medication.[10] After the deposition, Hall's counsel requested that Corizon produce Wenzinger's time records and other personnel records relating to her termination.[11] Corizon agreed to produce Wenzinger's "personnel file and any documents related to any pre-incident (Feb. 2013) issues (to the extent there are any)."[12] Corizon refused to produce "any documents related to [Wenzinger's] termination in late 2015 or any post-incident behavior or incidents in general."[13]

## DISCUSSION

Hall moves the Court pursuant to Rule 37(a) for an Order compelling Corizon to produce the following documents:

> Any investigation, correspondence, email, or other documentation
> of the reasons for Wenzinger's termination from Corizon,
> including any complaints against Wenzinger concerning her failure
> to provide prescribed medications to inmates.

Hall argues that the requested documents are relevant to his allegation that Corizon failed to implement appropriate policies, procedures, and practices that ensure that inmates timely receive their medications as prescribed. Thus, Hall argues, the requested documents are relevant to his Second Claim for relief.[14]

---

[9] Dkt. 35 ¶ 6.

[10] Dkt. 41-1 at 4, 6.

[11] Dkt. 35-1.

[12] Dkt. 35-2.

[13] *Id.*

[14] The Court notes that although Corizon is a private, for-profit corporation, Corizon has not challenged Hall's ability to bring a § 1983 claim against it. *See McKenzie v. Jorizzo*, 2015 WL 127826, at *4 (D. Or. Jan. 6, 2015) (citing *Carl v. Muskegon Cty.*, 763 F.3d 592, 596

Corizon refuses to produce the requested documents, arguing that they are not relevant to

Hall's claims because Wenzinger was terminated approximately two and a half years after the

events alleged in the second amended complaint, and Wenziner's post-incident behavior is not

evidence of any of Corizon's policies or practices in place at the time of the alleged incident.

Corizon cites to *Levine v. City of Alameda*, 525 F.3d 903 (9th Cir. 2008), in which the Ninth

Circuit instructs as follows: "To establish [municipal] liability, a plaintiff must establish that he

was deprived of a constitutional right and that the city had a policy, practice, or custom which

amounted to 'deliberate indifference' to the constitutional right and was the 'moving force'

behind the constitutional violation." *Id.* at 907 (citing *Van Ort v. Estate of Stanewich*, 92 F.3d

831, 835 (9th Cir. 1996)). Corizon asserts that in order to prove that a given policy, practice, or

custom was the "moving force" behind an alleged constitutional violation, the plaintiff would be

limited to showing the policy, practices, or customs in effect at the time of the alleged violation.

Corizon argues that post-incident behavior by a municipality or entity, such as Corizon,

or its agents, is only relevant to the extent Corizon was on notice of that behavior or ratified,

approved of, or otherwise turned a blind eye to the behavior. In support of this argument,

Corizon cites to *Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997), *amended by* 137 F.3d

1372 (9th Cir). In *Henry*, the plaintiff was arrested by the California Highway Patrol after he

refused to sign a traffic ticket and instead asserted his right, under California law, for a

mandatory appearance before a magistrate. *Id.* at 514. According to the plaintiff, he was

mistreated by the Shasta County Jail staff who, among other things, "paraded [him] through the

jail, naked, to the booking cage in full view of male and female deputies and inmates," and kept

---

(6th Cir. 2014); *Connor v. Donnelly*, 42 F.3d 220, 225-26 (4th Cir. 1994)) (stating that "courts
have held that private physicians and medical entities are state actors for purposes of § 1983,
when a state has delegated its obligation to provide medical care to inmates.").

the plaintiff in a "urine-coated rubber room." *Id.* at 516 (alteration in original) (quotation marks

omitted). The plaintiff argued in the district court that the Shasta County Jail staff "acted

pursuant to a county policy of abusing persons arrested for minor vehicle code infractions who

refuse to sign notices to appear, or demand to be taken to a magistrate." *Id.* at 517-18. The

plaintiff argued in the alternative that the county had a policy of deliberate indifference to such

conduct by its employees. *Id.* at 518.

The district court held on summary judgment that there was no evidence that the alleged

abuse the plaintiff suffered was inflicted pursuant to a county policy or custom or that it was the

result of deliberate indifference on the part of the county. *Id.* The Ninth Circuit reversed,

reasoning, in part, that the declarations of two individuals, Burns and May, went to whether there

was a genuine issue of fact as to the plaintiff's municipal liability claim. *Id.* In their declarations,

Burns and May described being subjected to nearly identical treatment at the Shasta County Jail

after they were stopped for minor traffic infractions. *Id.* Burns was arrested two to three months

after the plaintiff filed his lawsuit. *Id.* The Ninth Circuit explained as follows:

> It is a reasonable inference—indeed, the only reasonable
> inference—that after [the plaintiff] filed suit and successfully
> served process against the county, it knew about the alleged
> malfeasance of its employees at the jail. . . . [S]uch "post-event
> evidence" may be used to prove the existence of a municipal
> policy in effect at the time [the plaintiff] was detained.

*Id.* Additionally, "May's detention occurred only two and one-half months after [the plaintiff's].

Such close proximity in time of the two events lends further support to [the plaintiff's] claim that

his treatment was not an isolated event but was instead inflicted in accordance with county

policy." *Id.* at 519. The Ninth Circuit stated that "we reiterate our rule that post-event evidence is

not only admissible for purposes of proving the existence of a municipal defendant's policy or

custom, but is highly probative with respect to that inquiry." *Id.*; *see also Larez v. City of L.A.*,

PAGE 8 – OPINION AND ORDER

946 F.2d 630, 645 (9th Cir. 1991) (finding that where the principal allegations concerned a police chief's encouragement of excessive use of force, post-incident statements consistent with those claims was probative evidence).

Corizon argues that because it is undisputed that Wenzinger was terminated for allegedly failing to correctly administer medications, any post-incident behavior could not be indicative of any policy, procedure, or practice in place at the time of Hall's incarceration. The Court disagrees. The Ninth Circuit is clear that "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, *but is highly probative with respect to that inquiry*." *Henry*, 132 F.3d at 519 (emphasis added).[15] The fact that Corizon eventually terminated Wenzinger does not foreclose the possibility that "documentation of the reasons for Wenzinger's termination . . . including any complaints . . . concerning her failure to provide prescribed medications to inmates" could provide relevant evidence that Corizon was on notice of Wenzinger's allegedly improper behavior well before her eventual termination. Accordingly, under *Henry*, the requested discovery may be probative of Corizon's policies, procedures, or practices in place at the time of the alleged events, and thus is relevant to Hall's Second Claim.

Corizon additionally argues that it is not at liberty to produce documents or information related to other inmates and their medical files because the Health Insurance Portability and Accountability Act of 1996 protects such documents and information from disclosure. Hall responds that to the extent that the requested records mention other inmates' names, there is a protective order in place that would require any such information to remain confidential, and that

---

[15] The Court notes that *Henry* involved appellate review of a summary judgment motion, while this motion concerns discovery sought under Rule 26(b)(1). Under Rule 26(b)(1), "information . . . need not be admissible in evidence to be discoverable."

alternatively, the names could be redacted by Corizon. The Court finds that such redaction is appropriate.

Finally, Corizon argues that Hall's motion to compel should be denied because under Rule 26(b)(1), Hall's request is not proportional to the needs of his case. Corizon asserts that Hall has not claimed any lasting physical or mental injury, and that the amount of Hall's economic damages is only $25. The Court, however, considers the importance of the issues at stake in this action and finds them to be significant. Hall's allegations include the failure of the Clackamas County Jail's medical providers properly to dispense prescribed medications necessary to the maintenance of Hall's mental health. Hall allegedly decompensated as a result of not receiving his medications and suffered an adverse event for which he was sanctioned. The requested discovery may be highly probative evidence relevant to Hall's Second Claim. Additionally, the requested discovery would not be unduly burdensome or expensive to produce. Thus, the Court finds that Hall's request is proportional to the needs of his case.

## CONCLUSION

Plaintiff's motion to compel (Dkt. 34) is GRANTED.

**IT IS SO ORDERED**.

DATED this 6th day of April, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 10 – OPINION AND ORDER